1
2
3
4                          UNITED STATES DISTRICT COURT
5                              DISTRICT OF NEVADA

6   THOMAS BRAND,                              Case No. 3:17-cv-00043-MMD-WGC
7                              Plaintiff,       **REPORT & RECOMMENDATION OF**
                                                **U.S. MAGISTRATE JUDGE**
8            v.
9   GREG COX, *et al.*,
10                           Defendants.
11

12          This Report and Recommendation is made to the Honorable Miranda M. Du, United States

13   District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

14   § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

15          The court issues this Report and Recommendation after screening Plaintiff's First

16   Amended Complaint pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915. The Report and

17   Recommendation also addresses the status of the defendants in light of the apparent death of one

18   of the defendants named in the original and First Amended Complaint.

19                                  **I. BACKGROUND**

20          Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

21   proceeding pro se with this action pursuant to 42 U.S.C. § 1983.

22          Plaintiff filed his original Complaint, which the court screened, and ordered that Plaintiff

23   could proceed with the following claims: (1) a failure to protect claim against defendant Mullins

24   in Count I (but, the supervisory liability claims against Cox, McDaniel, Foster, Baca and Walsh,

25   were dismissed without prejudice and with leave to amend because Plaintiff did not include

26   adequate allegations against them); (2) a retaliation claim in Count II against Rexwinkel and Keith;

27   (3) a due process claim in Count II against Rexwinkel and Moyle. (ECF No. 3.) Plaintiff was

28   initially given thirty days leave to amend to cure the deficiencies noted in the screening order. (*Id.*)

Eleven days later, on January 16, 2018, Plaintiff filed a motion requesting to proceed with settlement (an early mediation conference (EMC)), with a stipulation that he be allowed to amend his complaint pursuant to the screening order if a settlement was not reached. (ECF No. 5.) The court granted the motion in part, and ordered that if Plaintiff chose to file an amended complaint, he had to wait until after the conclusion of the ninety-day stay allowing the parties an opportunity to settle the case. (ECF No. 6.) The court inadvertently failed to include a deadline for filing an amended complaint after conclusion of the ninety-day stay.

On February 23, 2018, an order issued setting the EMC for April 17, 2018. (ECF No. 12.) The EMC took place on April 17, 2018, but the parties were not able to reach a settlement. (ECF No. 13.)

On May 7, 2018, the Attorney General's Office filed a notice of acceptance of service on behalf of defendants Dillyn Keith and Shannon Moyle, but indicated that service was not accepted on behalf of defendants *Brian* Mullins and Julie Rexwinkel, who were former employees of NDOC. (ECF No. 18.) The last known addresses for *Brian* Mullins and Julie Rexwinkel were filed under seal. (ECF No. 19.) The court ordered the Clerk to issue summonses for *Brian* Mullins and Julie Rexwinkel, and directed Plaintiff to complete the USM-285 forms for those defendants so that they could be served by the U.S. Marshal's Office. (ECF Nos. 21, 22.)

On May 25, 2018, defendants Keith and Moyle filed a motion for summary judgment and motion to dismiss. (ECF Nos. 24, 25.) The motion for summary judgment argued that Plaintiff failed to exhaust his administrative remedies with respect to any of the claims asserted in the complaint, and that the defendants were entitled to qualified immunity. Despite not accepting service on behalf of defendant Mullins, Deputy Attorney General Erin Albright argued that Mullins was entitled to qualified immunity because he did not have knowledge of or disregard an excessive risk to Plaintiff's safety, or that the law was not clear that a correctional officer without knowledge of an excessive risk to safety could be liable under the Eighth Amendment. (ECF No. 24 at 12.)

The motion to dismiss argued that the failure to protect claim in Count I, as well as the due process claim in Count II should be dismissed for failure to state a claim. (ECF No. 25.) Again,

1   despite not accepting service on behalf of defendant Mullins, Ms. Albright argued that Plaintiff

2   failed to allege that Mullins knew of and disregarded a serious threat to his safety. With respect to

3   the due process claim, it was argued that the complaint failed to allege a liberty interest that would

4   implicate the Due Process Clause, i.e., that state action imposed an atypical and significant

5   hardship on Plaintiff in relation to the ordinary incidents of prison life.

6          On May 25, 2018, the U.S. Marshals Service process receipt and return for the summons

7   and complaint issued for Julie Rexwinkel was filed as unexecuted, with a notation that Julie

8   Rexwinkel was deceased. (ECF No. 26.) On June 5, 2018, the U.S. Marshals Service process

9   receipt and return for the summons and complained issued for *Brian* Mullins was filed as

10  unexecuted, also noting that he was deceased. (ECF No. 32.)

11         In June, Plaintiff filed a motion for clarification regarding the identification of defendants

12  (ECF No. 33), a motion for substitution of parties pursuant to Federal Rule of Civil Procedure 25

13  (ECF No. 34), and then a motion to serve the summons on defendants Julie Rexwinkel and Ronald

14  Mullins (ECF No. 37). The court set these motions for a hearing on July 11, 2018.

15         On July 2, 2018, Plaintiff filed a motion for leave to amend and proposed First Amended

16  Complaint (FAC). (ECF Nos. 45, 45-1.) Defendants filed a response. (ECF No. 51.) This motion

17  was also addressed at the July 11, 2018 hearing. (ECF No. 68.

18         At the July 11, 2018 hearing, the issue regarding defendant Mullins was resolved. The

19  original complaint did not contain Mullins' name in the caption or list of defendants, but a reading

20  of Count I made it plainly evident that Plaintiff was asserting his Eighth Amendment failure to

21  protect claim against Correctional Officer Mullins. (ECF No. 4 at 7.) As a result, the original

22  screening order allowed Plaintiff to proceed with that claim against Mullins. (ECF No. 3.) The

23  allegations in the original complaint referred to a C/O Mullins, without a first name; however, the

24  exhibits attached to the complaint included a disciplinary notice of charges which clearly identified

25  Corrections Officer *R.* Mullins and then *Ronald* Mullins as the officer present when Plaintiff

26  contends he was assaulted in the culinary on January 10, 2015. (ECF No. 4 at 40, 43, 44.) Similarly,

27  exhibits to the motion for summary judgment filed by defendants Keith and Moyle also referenced

28  *Ronald* Mullins. (ECF No. 24 at 24-2 at 6, 9, 11, 12, 13, 14.) Therefore, at the July 11, 2018

hearing, the court confirmed that this case was proceeding against *Ronald* Mullins, and not *Brian* Mullins, whom the U.S. Marshals Service had indicated was deceased in the unexecuted service return. Ms. Albright filed a supplemental notice of acceptance of service indicating service was not accepted for Ronald Mullins, and his last known address was filed under seal. (ECF Nos. 52, 53.) The court directed the Clerk to issue a summons and complaint for *Ronald* Mullins, and advised Plaintiff to complete the USM-285 form for service by the U.S. Marshals Service. (ECF Nos. 57, 58.)

Insofar as Julie Rexwinkel is concerned, the court noted at the July 11, 2018 hearing that the Attorney General's Office had not filed a notice of suggestion of death in this case as is contemplated by Rule 25, although a suggestion of death had been filed with respect to Rexwinkel in other cases pending before the court. (Minutes at ECF No. 68 at 4.) The court explained that contrary to the arguments made in Defendants' briefing, an action does not automatically abate by reason of an individual's death, and that the action could proceed against the personal representative of Ms. Rexwinkel's estate, although it was then unknown whether any estate had been created for Ms. Rexwinkel. (*Id.*) The court pointed out that there is little case authority addressing which party has the burden of determining the identity of a substitute party, but referred to a decision by United States District Judge Gloria Navarro, *In re MGM Mirage Securities Litigation*, 282 F.R.D. 600 (D. Nev. June 14, 2012), which directed the defendants to undertake efforts to ascertain the identity of a substitute party. Following Judge Navarro's rationale, the court directed the Attorney General's Office to undertake these efforts, given that it could not envision how a pro se, inmate plaintiff could reasonably undertake such a search. (*Id.*) The court denied Plaintiff's motion to substitute without prejudice pending screening of the FAC and the filing of a submission by the Attorney General's Office regarding the identity of a substitute party. This topic is discussed further, *infra*.

The court addressed the motion for summary judgment and motion to dismiss filed by defendants Keith and Moyle (ECF Nos. 24, 25), pointing out discrepancies in the factual assertions made in the motions with respect to the names of the institutions which are the subject of Plaintiff's action. (Minutes at ECF No. 68.) Ms. Albright moved to withdraw the motions at the hearing, and

1   the court granted that motion. (*Id.*) Despite the court's suggestion that she wait to re-file corrected

2   motions until after the FAC was screened, the motions were re-filed the following day. (ECF Nos.

3   59 and 60; the re-filed motions still did not correctly identify the NDOC institutions which are the

4   subject of this litigation.  *See* ECF No. 3 at 3.)   The court has issued an order denying the motions

5   without prejudice as they do not address the operative pleading (the FAC). (ECF No. 74.)

6        With respect to the motion for leave to amend, the court noted that Plaintiff had previously

7   been given leave to amend in the original screening order, and that the court had ordered that

8   Plaintiff could file his amended complaint after the ninety-day stay expired, without providing a

9   deadline for Plaintiff to file the amended complaint. (ECF No. 68.) As a result, the court found

10  that Plaintiff's motion for leave to file the amended complaint was unnecessary, but nevertheless

11  granted the motion, advising Plaintiff that the proposed FAC would still need to be screened

12  pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915. (*Id.*)

13       Following the July 11, 2018 hearing confirming that Plaintiff had leave to file the FAC,

14  Plaintiff filed exhibits in support of the FAC. (ECF No. 71.) While Plaintiff should have sought

15  leave to file these documents, in an effort to promote efficiency, the court has reviewed the exhibits

16  in connection with screening the FAC, and they should be filed along with the FAC so there is a

17  complete FAC in the record.

18       The court undertakes its screening of the FAC now.

19                          **II. LEGAL STANDARD**

20       "The court shall review, before docketing, if feasible or, in any event, as soon as practicable

21  after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental

22  entity or office or employee of a governmental entity." 28 U.S.C. § 1915A(a). "On review, the

23  court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if

24  the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be

25  granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.

26  § 1915A(b)(1)-(2).

27       In addition, for plaintiffs proceeding in forma pauperis, "the court shall dismiss the case at

28  any time if the court determines that-- … the action or appeal-- (i) is frivolous or malicious; (ii)

1    fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

2    defendant who is immune from such relief." 28 U.S.C. § 1915(3)(2)(B)(i)-(iii).

3         Dismissal of a complaint for failure to state a claim upon which relief may be granted is

4    provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915A(b)(1) and

5    § 1915(e)(2)(B)(ii) track that language. Thus, when reviewing the adequacy of a complaint under

6    28 U.S.C. § 1915A(b)(1) or § 1915(e)(2)(B)(ii), the court applies the same standard as is applied

7    under Rule 12(b)(6). *See e.g. Watison v. Carter,* 668 F.3d 1108, 1112 (9th Cir. 2012). Review

8    under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*,

9    232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

10        In reviewing the complaint under this standard, the court must accept as true the

11   allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts

12   in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).

13   Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted

14   by lawyers[.]" Hughes v. Rowe, 449 U.S. 5, 9 (1980) (internal quotation marks and citation

15   omitted).

16        A complaint must contain more than a "formulaic recitation of the elements of a cause of

17   action," it must contain factual allegations sufficient to "raise a right to relief above the speculative

18   level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain

19   something more … than … a statement of facts that merely creates a suspicion [of] a legally

20   cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure §

21   1216, at 235-36 (3d ed. 2004)). At a minimum, a plaintiff should state "enough facts to state a

22   claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662,

23   678 (2009).

24        A dismissal should not be without leave to amend unless it is clear from the face of the

25   complaint that the action is frivolous and could not be amended to state a federal claim, or the

26   district court lacks subject matter jurisdiction over the action. *See Cato v. United States,* 70 F.3d

27   1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

28        ///

### III. DISCUSSION

**A. Defendants Named in the FAC**

The proposed FAC names the following defendants: James "Greg" Cox (NDOC's Director); Eldon K. McDaniel (NDOC Deputy Director of Operations); Sheryl Foster (Deputy Director of Programs); Isidro Baca (NNCC Warden); Lisa Walsh (Associate Warden); Shift Sergeant Murguia; Lieutenant Widmar; Shannon Moyle (Caseworker); Dillyn Keith (Caseworker); Julie Rexwinkel (Caseworker); Ronald Mullins (Correctional Officer); Tara Carpenter (Associate Warden of Programs); and, John and Jane Does. (ECF No. 45-1 at 2-5.) Plaintiff has checked the box on the form civil rights complaint indicating that each of the defendants is sued in both their individual capacity and official capacity.

**B. Count I**

Count I contains allegations against Cox, McDaniel, Foster, Baca, Walsh, and Ronald Mullins.

Plaintiff alleges that on January 10, 2015, Mullins watched a confrontation between Plaintiff and another inmate in the culinary, and closed the staff office door, while he proceeded to watch the altercation without intervening. As a result, Plaintiff received physical injuries requiring medical attention. Plaintiff further alleges that Mullins incited the attack by labeling Plaintiff a snitch. (ECF No. 45-1 at 9-10.)

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, a prisoner must establish that the prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To do so, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate … safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

///

1  As with the original complaint, Plaintiff states a colorable Eighth Amendment failure to

2  protect claim against defendant Ronald Mullins in Count I, as he alleges that Mullins knew of and

3  disregarded an excessive risk to Plaintiff's safety when he watched the altercation from the video

4  monitors and did nothing to intervene.[1]

5  With respect to Cox, McDaniel, Foster, Baca, and Walsh, Plaintiff alleges that these

6  defendants knew of previous violent events and threats occurring in the culinary through

7  complaints (including Plaintiff's own complaints), grievances, tape recordings, kites, and incident

8  reports, but they failed to adequately staff the culinary with correctional officers to effectively

9  supervise the area, or take other steps to prevent the violence from occurring.

10  A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

11  participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor

12  is only liable for constitutional violations of his subordinates if the supervisor participated in or

13  directed the violations, or knew of the violations and failed to act to prevent them. There is no

14  respondeat superior liability under [§] 1983." *Id.*

15  Plaintiff also states colorable Eighth Amendment claims against Cox, McDaniel, Foster,

16  Baca and Walsh. Plaintiff sufficiently alleges that these defendants knew violent events had

17  occurred in the culinary area, but failed to adequately staff the area or train correctional officers to

18  effectively supervise the area to prevent such violence from occurring.

19  Therefore, Count I should proceed against defendants Mullins, Cox, McDaniel, Foster,

20  Baca and Walsh.

21  **C. Count II**

22  Count II names defendants Rexwinkel, Keith, Moyle, and Carpenter.

23  Plaintiff alleges that Rexwinkel and Keith violated his First Amendment right to file inmate

24  _____

25  [1] At the July 11, 2018 hearing, Deputy Attorney General Erin Albright, Esq., agreed to withdraw the pending
26  motion for summary judgment and motion to dismiss (previously docketed as ECF Nos. 24, 25). Ms. Albright re-filed
the motions the following day, even though the court had not yet issued an order screening the FAC. (ECF Nos. 59,
27  60.) The re-filed motions have been denied without prejudice as moot because they do not address the operative
pleading. The court advises counsel, however, that should dispositive motions be re-filed, a qualified immunity
argument such as that asserted in the previously filed motions with respect to the failure to protect claim against
28  Mullins (*see* ECF No. 60 at 12) should take into account that Plaintiff's FAC *does* contain allegations that Mullins
knew of a threat to Plaintiff's safety and disregarded that threat by failing to intervene.

1    grievances/complaints when they denied him the right to have his disciplinary appeal processed

2    on the proper forms, and instead provided him with the wrong forms. He elaborates that following

3    a disciplinary hearing, he requested proper disciplinary appeal forms to file an appeal, and

4    Rexwinkel and Keith instructed him to use the first level grievance form, and provided him with

5    this form. Plaintiff filed his disciplinary appeal, and then was transferred to Lovelock Correctional

6    Center (LCC). At LCC, Tara Carpenter was the grievance coordinator, and she rejected the appeal

7    as improper and did not process the appeal. As such, he contends that Carpenter denied his First

8    Amendment right to redress of grievances by frustrating his ability to file a timely disciplinary

9    appeal. Plaintiff also alleges that Rexwinkel, Moyle and Carpenter denied Plaintiff's due process

10   and equal protection rights when they failed to process the disciplinary appeals and grievances for

11   review. Specifically, he alleges that Rexwinkel and Moyle did so when he turned in his appeal,

12   and they did not send it to the proper authorities for review and tracking. Moyle failed to correct

13   this action.

14        "The First Amendment guarantees a prisoner a right to seek redress of grievances from

15   prison authorities [ ] as well as a right of meaningful access to the courts." *Jones v. Williams*, 791

16   F.3d 1023, 1035 (9th Cir. 2015) (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995); *Hasan*

17   *v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (stating: "Prisoners' grievances, unless

18   frivolous …, concerning the conditions in which they are being confined are deemed petitions for

19   redress of grievances and thus are protected by the First Amendment); *Wolfel v. Bates,* 707 F.2d

20   932, 934 (6th Cir. 1983) (recognizing prisoner's First Amendment right to complain to prison

21   officials about discrimination); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) ("[P]risoners

22   have a First Amendment right to file prison grievances.")).

23        Plaintiff states a colorable First Amendment claim in Count II that Rexwinkel, Keith,

24   Carpenter and Moyle violated his First Amendment right to seek redress of grievances.

25        Prisoners do not have a stand-alone due process right related to the administrative

26   grievance process, or in the processing of appeals. *See Mann v. Adams*, 885 F.2d 639, 640 (9th

27   Cir. 1988); *Ramirez v. Galala*, 334 F.3d 850, 860 (9th Cir. 2003). Therefore, Plaintiff's claims that

28   these defendants violated his due process rights when they allegedly failed to process his

disciplinary appeals and grievances properly should be dismissed with prejudice.

While an inmate may state a due process claim based on the denial of a liberty interest if he alleges that as a result his conditions of confinement posed an atypical and significant hardship in relation to the ordinary incidents of prison life, Plaintiff has not included such allegations here. Therefore, he has not stated a due process claim related to an atypical and significant hardship as against these defendants.

Since Plaintiff has already been given an opportunity to amend, the due process claims should be dismissed with prejudice.

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *Vill. of Willbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff includes a conclusory statement that his equal protection rights were violated, but provides no factual allegations that he was discriminated against based on membership in a protected class, or that he was purposefully treated differently than similarly situated inmates without any rational basis. Plaintiff fails to state a colorable equal protection claim. This was Plaintiff's second attempt at stating an equal protection claim, and he still has not set forth any viable allegations to support such a claim; therefore, dismissal of the equal protection claim should be with prejudice.

Plaintiff further alleges that Rexwinkel and Keith threatened Plaintiff that if he continued to file complaints and grievances, he would be kept in the "hole" longer and transferred, thereby losing his opportunity to complete the re-entry program. In addition, they told him the parole board would not look favorably on his filing grievances and complaints. Plaintiff filed more grievances against Rexwinkel and Keith, and he was transferred to LCC. He also contends that they retaliated

1  against him by interfering with the grievance process by failing to process supporting

2  documentation with his grievances.

3      Again, prisoners have a First Amendment right to file prison grievances and pursue civil

4  rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without

5  those bedrock constitutional guarantees, inmates would be left with no viable mechanism to

6  remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having

7  exercised those rights necessarily undermine those protections, such actions violate the

8  Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

9      A First Amendment retaliation claim in the prison context requires that an inmate prove:

10  (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3)

11  that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

12  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

13  *Id.* at 567-68.

14      Plaintiff states a colorable retaliation claim against Rexwinkel and Keith as he alleges that

15  they threatened that if he continued to file complaints and grievances he would be kept in the

16  "hole" and transferred, losing benefits of his programming, and he was in fact transferred after he

17  continued to file grievances.

18      In sum, Plaintiff should be allowed to proceed with his First Amendment claim that

19  defendants Rexwinkel, Keith, Carpenter and Moyle violated his right to seek redress of grievances,

20  as well as his retaliation claim against Rexwinkel and Keith. The due process and equal protection

21  claims should be dismissed with prejudice.

22  **D. Official Capacity Claims**

23      Plaintiff checked the box on the form section 1983 complaint for the FAC that he was suing

24  each defendant in both their official capacity and individual capacity. A state official sued in his

25  or her *official* capacity for *damages* is not a person subject to suit under section 1983. *Will v.*

26  *Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). State officials sued in their official

27  capacity for *injunctive* relief, however, are persons for purposes of section 1983. *See Will*, 491

28  U.S. at 71 n. 10. A claim against a defendant in his or her official capacity is actually a suit against

1   the entity of which the named defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159 (1985).

2   The real party in interest in such suits is the entity itself, and the entity, not the named defendant,

3   will be liable for any damages. *Id*. at 166. In an official-capacity suit, the plaintiff must demonstrate

4   that a policy or custom of the governmental entity of which the official is an agent was the moving

5   force behind the violation. *See Hafer v. Melo,* 502 U.S. 21, 25 (1991).

6          Personal capacity suits, on the other hand, "seek to impose personal liability upon a

7   government official for actions [the official] takes under color of state law." *Kentucky*, 473 U.S.

8   at 165. Liability in a personal-capacity suit can be demonstrated by showing that the official caused

9   the alleged constitutional injury. *See id*. at 166.

10         Plaintiff's prayer for relief states that he seeks injunctive relief to have all NDOC

11  employees refrain from reprisal against him for filing this action, and to provide ample security to

12  properly supervise inmates, as well as reinstatement of good time/work credits. (ECF No. 45-1 at

13  16.)

14         Plaintiff seeks injunctive relief related to his failure to protect claim in Count I, and liberally

15  construed, he alleges that a government policy concerning staffing and training correctional

16  officers was the moving force behind the alleged constitutional violation; therefore, he may

17  proceed with his official capacity claims in Count I. He does not, however, appear to request

18  injunctive relief relative to the allegations set forth in Count II. Nor does he allege that a policy or

19  custom of NDOC or the State was the moving force behind the constitutional violations alleged in

20  Count III. Instead, he alleges that the alleged constitutional violations were the result of the actions

21  taken by the individual defendants concerning his grievances and disciplinary appeal. Therefore,

22  Plaintiff should not be permitted to proceed against any defendant in their official capacity in

23  Count II. This conclusion is also relevant to the court's discussion below regarding the decedent

24  defendant Julie Rexwinkel.

25  **E. Julie Rexwinkel**

26         **1. Background**

27         The court has recommended that Plaintiff be permitted to proceed with claims against

28  defendant Rexwinkel in Count II of the FAC. As was indicated above, Julie Rexwinkel's death

was noted in the unexecuted service of process return from the U.S. Marshals Service filed on May 25, 2018. (ECF No. 26.)  On June 11, 2018, Plaintiff filed a motion for substitution of parties pursuant to Federal Rule of Civil Procedure 25. (ECF No. 34.)

The court discussed this motion at the July 11, 2018 hearing, and denied the motion without prejudice as to Rexwinkel pending screening of the FAC so it could be determined whether any claims would proceed against her in the FAC, and in what capacity. (Minutes at ECF No. 68.)

**2. Rule 25**

Federal Rule of Civil Procedure 25 provides in pertinent part:

**(a) Death**

(1) *Substitution if the Claim Is Not Extinguished*. If a party dies and the claim is not extinguished, the court may order substitution of the property party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

…

(3) *Service*. A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

…

**(d) Public Officers; Death or Separation from Office**. An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Fed. R. Civ. P. 25(a)(1), (3), (d).

**3. Survival of the Claims**

Ms. Albright argued, without any supporting authority, that the section 1983 claims asserted against Rexwinkel expired upon her death. Generally, however, the law of the forum state determines whether a section 1983 action survives or is extinguished upon the death of a party. *See* 42 U.S.C. § 1988(a); *see also Robertson v. Wegmann*, 436 U.S. 584, 588-89 (1978).

Nevada law provides: "Except as otherwise provided in this section, no cause of action is lost by reason of the death of any person, but may be maintained by or against the person's executor or administrator." NRS 41.100(1). "In an action against an executor or administrator, any damages

1    may be awarded which would have been recovered against the decedent if the decedent had lived,

2    except damages awardable under NRS 42.005 or 42.010 or other damages imposed primarily for

3    the sake of example or to punish the defendant." NRS 41.100(2).

4        Therefore, the claims against Rexwinkel are not extinguished by her death.

5        **4. Official Capacity Claims**

6        The court has concluded that Plaintiff fails to state any claims against Rexwinkel in her

7    official capacity; therefore, there is no need to address this aspect of Rule 25 with respect to

8    Rexwinkel.

9        **5. Individual Capacity Claims against Rexwinkel**

10       The court has concluded that Plaintiff states colorable claims against Rexwinkel in Count

11   II of the FAC. The court must now address how those claims should proceed in light of

12   Rexwinkel's death.

13       "If a party dies and the claim is not thereby extinguished," as is the case here, "the court

14   may order substitution of the proper parties." Fed. R. Civ. P. 25(a)(1). Any party or the decedent's

15   successor or representative may make a motion for substitution. *Id*. If not made within ninety days

16   after service of a statement noting the death, the action must be dismissed with respect to the

17   decedent. *Id*. The rule requires that a motion to substitute, as well as the statement noting death,

18   be served on parties pursuant to Rule 5 and on non-parties pursuant to Rule 4. Fed. R. Civ. P.

19   25(a)(3).

20        "Although Rule 25(a)(1) could be clearer, a careful reading of the rule coupled with an

21   understanding of its function leads to the conclusion that the rule requires two affirmative steps in

22   order to trigger the running of the 90 day period. First a party must formally suggest the death of

23   the party upon the record." *Barlow v. Ground,* 39 F.3d 231, 233 (9th Cir. 1994) (citing *Anderson*

24   *v. Aurotek*, 774 F.2d 927, 931 (9th Cir. 1985); *Grandbouche v. Lovell*, 913 F.2d 835 (10th Cir.

25   1990); 3B Moore's Federal Practice ¶25.06[3] (2d ed. 1991)). "Second, the suggesting party must

26   serve other parties and nonparty successors or representatives of the deceased with a suggestion of

27   death in the same manner as required for service of the motion to substitute." *Id*. (citing Fed. R.

28   Civ. P. 25(a)(1)). *Barlow* held that the ninety-day period is not triggered against the decedent's

1  estate until the appropriate representative of the estate is served a suggestion of death in conformity

2  with Rule 4. *Id*. at 233-24.

3        At the time Plaintiff filed his motion to substitute under Rule 25, no suggestion of death

4  had been filed. Ms. Rexwinkel's death had merely been noted in the U.S. Marshals' unexecuted

5  return, even though the Attorney General's Office has filed a suggestion of death for

6  Ms. Rexwinkel in other cases pending before the court. The court pointed this out to Ms. Albright

7  at the July 11, 2018 hearing, and a suggestion of death was filed on July 25, 2018. (ECF No. 72.)

8        Plaintiff had previously filed a motion to substitute under Rule 25, but at that point no one

9  has identified a party to substitute in for the decedent. As was indicated above, the court was thus

10  confronted with the issue of who bears the burden of attempting to identify a substitute party, as

11  well as whether the ninety-day period is triggered when a non-party successor or representative is

12  not served with either the motion to substitute or the suggestion of death as required by Rule 25.

13  **a. Identifying the Substitute Party & Filing of the Suggestion of Death**

14        In her briefing, Ms. Albright argued that even if the claims against Rexwinkel were not

15  extinguished by Rexwinkel's death (they were not), there is no party to substitute in, without

16  providing any evidence to support this argument. Plaintiff also had no information about a proper

17  substitute party.

18        The court discussed with the parties' Judge Navarro's decision in *In re MGM Mirage*

19  *Securities Litigation*, which recognized that while neither Rule 25 nor the Ninth Circuit have

20  required a defendant to identify a successor in the suggestion of death, some district courts within

21  the Ninth Circuit have required a defendant who has filed a suggestion of death to undertake

22  reasonable efforts to discover the identity of a successor or representative. *In re MGM Mirage*

23  *Securities Litigation*, 282 F.R.D. at 603 (citations omitted). In that case, Judge Navarro directed

24  the defendants to undertake an investigation regarding the status of the decedent's estate, and if

25  counsel were able to obtain information about the representative of the estate or appropriate

26  successor, the notice of suggestion of death was to be served on the proper non-party. *Id*. If counsel

27  was unable to obtain the information, a declaration was to be filed describing efforts made to

28  comply with the order. *Id*.

- 15 -

1       As was mentioned above, following Judge Navarro's rationale, the court directed Ms.

2  Albright to undertake an investigation and submit a declaration outlining efforts taken to identify

3  whether or not there was an estate and potential successor party for Julie Rexwinkel. (ECF No.

4  68.) While Judge Navarro had concluded that the plaintiff in that case was not relieved of also

5  making reasonable inquiry regarding the appropriate successor, the undersigned did not impose a

6  similar obligation on the pro se, inmate Plaintiff in this case, as he would have limited or no

7  resources to discover this information, particularly when he is precluded by regulations from

8  having the contact information of Ms. Rexwinkel.

9       On July 25, 2018, Defendants filed a suggestion of death for Julie Rexwinkel. (ECF No.

10  72.) In addition, Ms. Albright filed a declaration outlining efforts taken to ascertain whether there

11  was a party to substitute in place of the decedent Rexwinkel. (Albright Decl., ECF No. 72-1 and

12  ECF No. 73-1.) Ms. Albright attests that she sent a certified letter to Ms. Rexwinkel's address,

13  addressed to the administrator of her estate, requesting the contact information for the

14  administrator to be provided by July 26, 2018. (*Id*. ¶ 3.) As of July 25, 2018, Ms. Albright had

15  received no response to the letter. (*Id*.) Ms. Albright also left two voice messages on the telephone

16  number she had for Ms. Rexwinkel, asking that the administrator for the state contact her office.

17  (*Id*. ¶ 4.) As of July 25, 2018, she had received no response to the messages. (*Id*.)

18       At issue are the interrelated issues of whether Ms. Albright's efforts were sufficient, and

19  whether the filing of the suggestion of death has triggered the ninety-day period for filing a motion

20  to substitute if the non-party executor or administrator has not been identified and served.

21       Here, Ms. Albright sent a letter to Ms. Rexwinkel's last known address and left messages

22  after calling the last known telephone number for Ms. Rexwinkel.

23       The court discussed at the hearing that Ms. Albright might undertake a search of the probate

24  court records or docket to determine whether there was an administrator or executor that might be

25  substituted. Ms. Albright's declaration does not indicate she did this. In any event, the court

26  conducted a brief search of the probate records through the website of the Second Judicial Court

27  of the State of Nevada, in and for Washoe County, and there was no probate case or other record

28  indicating a possible successor party for decedent Julie Rexwinkel. The court also searched for an

1   obituary for Ms. Rexwinkel through the websites of the Reno Gazette Journal and the Nevada

2   Appeal, in case an obituary identified a potential successor, with no success. While Ms. Albright

3   should have undertaken these steps herself prior to submitting her declaration, it is not clear what

4   other steps Ms. Albright might now take to identify a successor at this point; therefore, the court

5   will not require her to undertake any further efforts at this time.

6       The court also notes that no party has filed a motion in State court seeking to ascertain or

7   appoint a representative or success to Ms. Rexwinkel.

8       The court will now turn to the issue of whether the ninety-day time period is triggered

9   under Rule 25 when no substitute party has been identified, let alone served with the suggestion

10  of death or motion to substitute.

11      While *Barlow* held that the ninety-day period of Rule 25 is not triggered until an

12  appropriate representative of the estate is served with a suggestion of death in conformity with

13  Rule 4, the Ninth Circuit explicitly declined to address the issue of whether the ninety-day period

14  is triggered when the nonparty successor or representative is not served because the appropriate

15  person could not be ascertained at the time the suggestion of death was made. *Barlow,* 39 F.3d at

16  234 (citations omitted). The Ninth Circuit has yet to resolve this issue, and district courts seem to

17  be split in their conclusions. The court will adopt the position that the ninety-day period was

18  triggered by the filing of the suggestion of death even though a successor party was not served

19  with the notice because the appropriate person could not be ascertained at the time the suggestion

20  of death was made. *See e.g. Unicorn Tales, Inc. v. Banerjee,* 135 F.3d 467, 469-70 (2d Cir. 1998)

21  (holding that all Rule 25 require was service of the notice of death upon existing parties to trigger

22  the 90-day period in case where there was inability or significant difficulty identifying the

23  decedent's legal representative or successor); *Williams v. Baron*, No. 2:03-cv-2044 LKK JFM

24  (PC), 2009 WL 331371, at * 3 (E.D. Cal. 2009) (agreeing with *Unicorn Tales* that nothing in Rule

25  25 states that the suggestion of death must identify the decedent's successor; therefore, the

26  suggestion was sufficient to state the ninety-day period).

27      If a motion to substitute is not filed within the ninety-day time period, Rexwinkel should

28  be dismissed. Fed. R. Civ. P. 25(a). Rule 25(a)(1) "does not specify whether the dismissal 'must'

be *with prejudice.*" *Zanowick v. Baxter Healthcare Corp.*, 850 F.3d 1090, 1094 (9th Cir. 2017) (emphasis original). The Ninth Circuit has noted, however, that "the 'history of Rule 25(a) and Rule 6(b) makes it clear that the 90 day time period was not intended to act as a bar to otherwise meritorious actions, and extensions of the period may be liberally granted.'" *Id.* (quoting *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (citation omitted); *United States v. Miller Bros Constr. Co.*, 505 F.2d 1031, 1035 (10th Cir. 1974); 7C Charles Alan Wright, et. al., Federal Practice and Procedure § 1955 (3d ed. 2017)). Rule 6(b) would govern a late motion to substitute. *Id.* at 1095. In case Plaintiff should obtain information identifying Rexwinkel's executor or administrator after the ninety-day period expires, Rexwinkel's dismissal upon expiration of the ninety-day time period should be without prejudice. *See id.* (noting that dismissal with prejudice is not mandatory).

## F. Scheduling Order

The undersigned will issue a separate order addressing the scheduling order deadlines.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order as follows:

(1) The First Amended Complaint (set forth at ECF No. 45-1) along with the accompanying exhibits (ECF No. 71), should be **FILED**.

(2) Plaintiff should be allowed to **PROCEED** with: (a) his Eighth Amendment failure to protect claims in Count I against defendants Ronald Mullins, Cox, McDaniel, Foster, Baca and Walsh (in their official and individual capacities); (b) his First Amendment claim that defendants Rexwinkel, Keith, Carpenter and Moyle violated his right to seek redress of grievances in Count II (in their individual capacity only); and (c) his retaliation claim against Rexwinkel and Keith in Count II (in their individual capacity only).

(3) **DISMISSING** the *official* capacity claims against Rexwinkel, Keith, Carpenter, and Moyle in Count II.

(4) **DISMISSING** the due process and equal protection claims in Count II **WITH PREJUDICE**.

///

(5) Giving any party or decedent Julie Rexwinkel's successor or representative up to and including **October 23, 2018**, to file a motion for substitution identifying Rexwinkel's executor or administrator, or Rexwinkel will be dismissed from this action **without prejudice**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: July 30, 2018.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE